Bradley C. Lechman-Su, OSB #900826

1000 SW Broadway Suite 2300

Portland, OR 97205

Telephone: (503) 984-1350

Of Attorneys for Petitioner Andrew Nisbet

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

In re the Application of:

ANDREW CHARLES NESBIT                         No. 3:23-cv-00850-IM

           Petitioner

SPIRIT ROSE BRIDGER,                          PETITIONER'S TRIAL MEMORANDUM

           Respondent

_____

The Convention on the Civil Aspects of International Child Abduction,
done at the Hague on 25 Oct. 1980

International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq*.

COMES NOW Petitioner, ANDREW CHARLES NISBET by and through his counsel of record, Bradley C. Lechman-Su and submits the following Trial Memorandum for the Pretrial conference October 13 at 3:00 pm and the three-day bench trial scheduled for October 16, 17 &18, 2023, before the Hon. Karin J.

PAGE 1 – PETITIONER'S TRIAL MEMORANDUM

Immergut.

## SYNOPSIS OF PETITIONER'S CASE

The Petitioner, by filing this Hague Convention return case, shows that he seeks a return to the status quo before the Wrongful Removal and retention which is the children living with him in Scotland, UK.

This Court has before it an truly unique, complex case. First, the chief remedy available under the Hague Convention, a return, or the denial of a return by itself is entirely insufficient.   While most family law cases are tough to resolve, the international milieu, the young ages of the children and the  particular circumstances of this matter are singular, unique, and tragic and in combination they render this case as difficult as is imaginable. While not on par with the enormity equal to the massive and seemingly irresolvable tragic cases of such international injustice as apartheid or mass displacement , taking the difference in scale into consideration this case is as difficult as it gets.

Still, even though this is a family law case, the remedy usually available to a case with these facts of a parental fatality is missing, that is in the Juvenile Justice or Court Context, a termination of parent rights or TPR may be available, which is more of a remedy available to those who just want to run away and deny the grief. TPR is not available in this legal context anyway. After a Hague trial there may be nothing left to do except pickup the pieces and try to make the best of it. There is no custody or family law case pending in circuit court.

Opening Statement Focused on Hague Convention Issues.

If the Hague trial results in a denial of return due to the court's decision

PAGE 2 – PETITIONER'S TRIAL MEMORANDUM

that return of the children to Scotland to reside with Father would constitute an imminent grave risk of harm, then the relief father requests could be denied, and the remaining family members would be subject to local domestic relations remedies. Or if there is a grave risk, an undertaking or remedy addressing the threat could be ordered by the court. It must be acknowledged mental health uncertainties still do exist until evidence comes to light (and that is expected) that is no longer a risk. At this point that is what psychological assessments have determined. There has not been an official final word. There are many uncertainties.

## GENERAL STATEMENT OF THE LAW

The Hague Convention was adopted "in response to the problem of international child abductions during domestic disputes." *Abbott v. Abbott*, 130 S.Ct. 1983, 1989 (2010). It was enacted "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the state of their habitual residence." *Hague Convention*, Preamble. The Hague Convention's "primary purpose is to restore the *status quo* and deter parents from crossing international borders in search of a more sympathetic court." *Nunez–Escudero v. Tice–Menley*, 58 F.3d 374, 376 (8th Cir.1995).

## STATEMENT OF RELEVANT FACTS

The parties, are the ummarried parents of a 5 and 7 year old. There is no custody or parentage case filed, and the factual issue of a habitual residence is not established. The date for calculating time for purposes of UCCJEA jurisdiction (chils custody jurisdiction) is not yet determined.

PAGE 3 – PETITIONER'S TRIAL MEMORANDUM

Filing of a parentage or custody case may follow and without a *status quo* case having been filed this family may again be engaged in litigation.

## BACKGROUND OF THE APPLICABLE LAW

1. <u>Subject Matter Jurisdiction.</u>

This case comes before the court under ICARA which is the codification of the Hague, which vests the district court with federal question jurisdiction under 22 U.S.C § 9003(a). It invokes an international treaty, the Hague Convention on the Civil Aspects of International Child Abduction of Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10494 (March 26, 1986). The implementing legislation is codified as the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq*. See: *Holmes v. Laird*, 459 F.2d 1211, 1220, 1222 (D.C. Cir. 1972). "Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. CONST., art. VI, cl. 2. In the U.S., applicable treaties are binding upon federal courts to the same extent as are domestic statutes. 28 U.S.C § 1331. In addition, an action under ICARA may be filed in either state or federal court, as ICARA allows for concurrent jurisdiction.

2. <u>General Provisions.</u>

Intended as a return remedy only, an action under the Hague Convention is not intended (nor allowed) to be a hearing on the merits of any underlying child custody claims. 22 U.S.C. § 9001(b)(4); *Hague Convention,* arts. 16 and 19. Rather the Hague Convention and ICARA merely "govern[ ] selection of the forum where such a [custody] dispute should be brought." *Stern v. Stern*, 639 F.3d 449, 451 (8th Cir. 2011).

The Convention seeks to deter abduction by "depriv[ing] [the abductor's] actions of any practical or juridical consequences." Elisa Pérez-Vera, Explanatory Report, *in* 3 Hague Conference on Private Int'l Law, Acts and Documents of the Fourteenth Session, Child Abduction 426, 429 (1982) ("Pérez-Vera Report"); *Mozes v. Mozes,* 239 F.3d 1067, 1070 (9th Cir. 2001). Further, "[t]he function of a court applying the Convention is not to determine whether a child is happy where it currently is, but whether one parent is seeking unilaterally to alter the status quo with regard to the primary locus of the child's life." *Mozes v. Mozes,* 239 F.3d 1067, 1079 (9th Cir. 2001).

To effectuate its goal, the Convention seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure the rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." *Hague Convention*, art. 1. The central operating feature of the Hague Convention is the return remedy. *Abbott*, 130 S.Ct. at 1989.

In interpreting Hague Convention provisions, federal courts should consider international decisions and implementing legislation. "We should give considerable weight to these well-reasoned opinions of other Convention signatories." *Nunez- Esqudero v. Tice-Menley*, 58 F.3d 374, 377 (8th Cir. 1995).

<u>RELIEF REQUESTED BY PETITIONER</u>

Petitioner respectfully requests an order and judgment granting the Verified Petition for Return of Child to Habitual Residence. This would include an order for the immediate return of the minor children, to their Habitual Residence, Scotland.

THE HAGUE CONVENTION *PRIMA FACIE* CASE

PAGE 5 – PETITIONER'S TRIAL MEMORANDUM

1. Elements of the *Prima Facie* Case.

   To establish a *prima facie* case for the return of the child under the Hague Convention, the petitioner must show, by a preponderance of the evidence, that: (1) immediately prior to removal or retention, the child habitually resided in another Contracting State; (2) the removal or retention was in breach of the petitioner's custody rights under that State's law; and (3) the petitioner was exercising those custody rights at the time of the removal or wrongful retention. *Hague Convention,* arts. 3, 4, 5; *see, Mozes v. Mozes,* 239 F.3d 1067, 1070 (9th Cir. 2001).

   The "obligation" of a state's tribunal hearing a Hague Convention case, where the *prima facie* case is satisfied, is mandatory return pursuant to Articles 3 and 12 (first paragraph) and 22 U.S.C. § 9003(d), unless a discretionary defense to return is proven. The discretionary defenses to return are provided in Articles 12, 13, and 20 of the Hague Convention. The *prima facie* case for return must be proven by the petitioner by a preponderance of the evidence. 22 U.S.C § 9003(e)(1)(A).

2. Petitioner's *Prima Facie* Case of Wrongful removal.

   (A) Scotland is the habitual residence of the minor children pursuant to the governing analysis articulated by the United States Supreme Court in *Monasky v. Taglieri,* 140 S.Ct. 719 (2020). That conclusion is be one of the chief findings the court would need to make.

   (B) Petitioner has rights of custody regarding the minor child within the meaning of Articles Three and Five of the Convention in that the Children's Act , which is the law of the habitual residence, provides for rights of custody when the left behind parent contiues, as

Petitioner did, to exercise his parental rights, under these circumstances.

(C) Petitioner was actually exercising, or would have been exercising, custody rights of the minor children at the time of the wrongful removal of the minor children from Scotland to the US by Respondent.

(D) The wrongful removal of the minor children from Oregon by Respondent breached Petitioner's rights of custody under the laws of Scotland (the minor children's habitual residence), in that it has denied Petitioner physical contact with the minor children and the right to participate in significant parenting issues, including participating in the decision as to where the child will reside.

(E) The minor children have not attained the age of sixteen (16) years.

(F) Respondent will deny he consented to removal of the children defense of consent under Article 13(a) of the Convention.

(G) As already asserted there does not exist any grave risk that the minor child's return to Scotland would expose the minor child to physical or psychological harm or otherwise place the minor children in an intolerable situation [the "grave risk or harm" defense under Article 13(b) of the Convention. There have been recent episodes of psychological testing which indicate the petitioner is not a danger to these children.

### 3. The Convention Text.

It is not applicable in the circumstances of this case, but Article 13 of the Hague Convention states: "The judicial or administrative authority *may* also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." (emphasis added). The party raising the defense has the burden of proof and must establish the defense by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B).

## CONCLUSION

Under the Hague Convention and ICARA, a district court has the authority to determine the merits of an abduction claim, but <u>not</u> the merits of the underlying custody claim. Here, the Court can satisfy the purpose of the Hague Convention by returning the children to Petitioner.

Respectfully submitted

*s/ Bradley C. Lechman-Su*

Bradley C. Lechman-Su OSB #900826
bradley@bradleylechmansu.com
1000 SW Broadway Ste 2300

Portland, OR 97205
Telephone: (503) 984-1350 Of Attorneys for Petitioner

A true copy of this document was sent to Respondent' attorney Katrina Seipel on October 10, 2023.

s/*Bradley C. Lechman-Su*
Attorney for Petitioner

PAGE 8 – PETITIONER'S TRIAL MEMORANDUM