Katelyn D. Skinner, OSB No. 105055
Katrina Seipel, OSB No. 164793
Buckley Law, P.C.
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Telephone: 503-620-8900
Fax: 503-620-4878
Emails: kds@buckley-law.com
        kas@buckley-law.com
Of Attorneys for Respondent Spirit Bridger

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

Portland Division

In re the Application of:

ANDREW CHARLES NISBET,

      Petitioner,

and

SPIRIT ROSE BRIDGER,

      Respondent.

Case No.: 3:23-cv-00850-IM

MEMORANDUM IN SUPPORT OF RESPONDENT'S STATEMENT OF FEES AND COSTS

The Convention on the Civil Aspects of International Child Abduction
Done at the Hague on 25 Oct 1980
International Child Abduction Remedies Act, 22 USC § 9001 *et seq.*

COMES NOW, Respondent Spirit Bridger, by and through her attorney of record, Katrina Seipel, and submits the following Memorandum in Support of her Statement of Fees and Costs, requesting that Petitioner and/or Petitioner's counsel be joint and severally liable for her reasonable attorney fees and costs incurred in this matter pursuant to this Court's inherent power to award attorney fees, FRCP 37, FRCP 54(d), and 28 U.S.C. § 1927.

//

## ARGUMENT

It is settled law that an award of attorney fees is proper only (1) when it is specifically permitted by statue or (2) when a court, in exercising its inherent power, determines that such an award would be appropriate. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 US 240, 259, 269 (1975). Likewise, district courts awarding fees pursuant to the inherent power of the court should do so only "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 259.

To start, Respondent fully recognizes and acknowledges that, under the plain language of ICARA, 42 USC § 11607(b), an award of attorney fees and necessary expenses may be granted to a successful petitioner of a Hague Convention matter, but the statute does not provide for such an award to a prevailing respondent. For this reason, Respondent does not request her attorney fees pursuant to ICARA, but rather, she asks this Court to exercise its inherent power in granting her request. Specifically, Respondent asks this Court to find that Petitioner and/or Petitioner's counsel, throughout the pendency of this action, "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and grant her an award of her attorney fees and costs based on such a finding.

In determining whether or not to grant an award of fees and costs based on bad faith of a party, courts consider three factors:

(1) Whether the claim advanced was meritless;

(2) Whether counsel knew or should have known this; and

(3) The motive for filing the suit was for an improper purpose.

*Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). In analyzing these factors, examples of bad faith include: a finding that the plaintiff filed the lawsuit "for purposes of harassment or delay, or for other improper reasons," *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 314 (6th Cir. 1997), a finding that the plaintiff filed "a meritless lawsuit and [withheld]

material evidence in support of a claim," *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 523 n. 18 (6th Cir. 2002), and a finding that a party was "delaying or disrupting the litigation" or "hampering enforcement of a court order," *Chambers v. NASCO, Inc.*, 501 US 32, 46 (1991).

At this stage in this matter, a finding of bad faith by Petitioner is warranted. First, to argue that this matter was meritless would be understating the issue. Petitioner is housed in a locked psychiatric facility for an indefinite period of time after killing his own mother, and still petitioned for two minor children, one of whom has never even lived in the same home as him, to be ripped away from their mother, the only caretaker the children have ever known, and brought to Scotland, a country the children barely, if at all, know, to live with and be raised by a complete and total stranger. This sentence speaks for itself. Period. Petitioner's lawsuit was frivolous, irrational, and outrageous, and Petitioner's counsel, who is well-versed in Hague Convention matters as he has devoted much of his career to litigating them, should have known as much. At trial, Petitioner was unable to prove even his *prima facie* case. Again, Petitioner and his counsel should have known their claim was without merit, but instead, the case proceeded through trial, and Respondent incurred almost $90,000 defending herself against a frivolous lawsuit and advocating for her children.

The only sound conclusion that can be drawn here, after hearing the evidence put forth at trial and based on this Court's written opinion, is that this matter was filed for an improper purpose. And while what that improper purpose was does not need to be specifically declared to support an award of attorney fees and costs, it is quite clear that this matter was brought as a final grasp by Petitioner to get his way and control Respondent and the children.

In analyzing the above, the Court should give serious consideration to not only the trial evidence but also Petitioner's actions pre-trial. For efficiency purposes here, Respondent

relies on her Motion in Limine, Supplemental Brief in Support of Respondent's Motion in Limine, and Second Supplemental Brief in Support of Respondent's Motion in Limine. To summarize, pre-trial, Petitioner violated court-ordered deadline after court-ordered deadline. In fact, he did not abide by a single one of them. He violated the Federal Rules of Civil Procedure regarding discovery and disclosures to opposing. He waited almost a full year before filing, by its very definition, an expedited Hague Convention matter, and, once the case was filed, he initially requested a trial date in December. Petitioner seemed to do everything he could to delay, delay, delay. Whether Petitioner delayed in the hopes he would be released from custody or whether he delayed because it was clear Respondent was unsatisfied with the delay is irrelevant. What is pertinent, though, is that no matter the reason, Petitioner's actions clearly evidence bad faith.

Moreover, even once at trial, Petitioner failed to abide by the Court's orders to disclose material evidence to Respondent, specifically, the medical records relied upon by his expert witness. Similarly to the caselaw cited above, Petitioner in this matter continuously and consistently acted to delay and disrupt this litigation. While Petitioner did not prove his case, he surely proved he knows how to flout court orders, at this point, without consequences.

This matter was a waste of the Court's time, and it was a complete and total waste of Respondent's finances. Respondent incurred substantial fees due to Petitioner's actions. She not only had to defend herself and her children from a frivolous lawsuit, but she also incurred significant fees maneuvering Petitioner's counsel's careless approach to litigating this case. As such, due to nothing but their own actions, Petitioner and his counsel should be required to pay Respondent's reasonable attorney fees and costs. While the Court declined to grant Respondent's requests for sanctions at trial, Respondent now renews her request for sanctions in the form of attorney fees, pursuant to FRCP 37.

Though this is a non-standard petition for recovery of attorney fees and costs, the Court should likely still consider the factors endorsed by the Supreme Court and Ninth Circuit in determining whether or not to award fees and costs in this particular case. These factors are enumerated in *Hensley v. Eckerhart*, 461 US 424 (1983) and *Kerr v. Screen Extras Guild Inc.*, 526 F.2d 67, 69-10 (9th Cir. 1975), and they are as follows, with brief argument following each factor:

(1)     The time and labor required.

Generally, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Hague Convention cases, in and of themselves, require a substantial amount of time and labor. This case required even more extensive time and attention, due to Petitioner's impetuous handling of the litigation and trial.

(2)     The novelty and difficulty of the questions presented.

While Hague Convention cases are not necessarily novel, they are challenging cases to litigate, and this case was particularly difficult due to Petitioner's request: that even though he remains in custody after killing another human, the children should be "returned" to his care. Caselaw with similar fact patterns is non-existent, and the questions put forth by Petitioner were even more difficult to "answer" due to his failure to complete required disclosures and disclose material evidence.

(3)     The skill required to perform the legal service properly.

Not just any attorney is capable of handling Hague cases through trial. The skill required to litigate Hague cases is high, and the skill required to manage cases with as many issues as this matter brought forth is even higher.

(4) Preclusive effect of acceptance of the case.

Counsel for Respondent did not accept new cases and clients during the pendency of this matter.

(5) Customary fee.

The vast majority of Respondent's attorney fees were incurred through work done by Attorney Katrina Seipel. Attorney Seipel is an intelligent and capable trial attorney, having tried countless jury trials in State court throughout her career. She charges $340 per hour, which, as far as counsel is aware, is likely the lowest hourly rate for any attorney who handles Hague cases in Oregon. Total fees incurred in Hague matters vary from case to case, but the fees incurred in this matter fall right in the middle of the range.

(6) Whether the fee is fixed or contingent.

N/A

(7) Any time limitations imposed.

N/A

(8) The amount involved and results obtained.

The amount involved in this matter far exceeds any financial value—the fate of two very young minor children was at play. The children were either to be returned to their father, a convicted killer and a coercive, controlling, and violent individual, or they were to remain with their sweet, caring, and loving mother, who would go broke spending almost $90,000 on legal fees to protect her children. Of course, Respondent obtained favorable results.

(9) The experience, reputation, and ability of the attorneys.

See Factor (5) above.

(10) The undesirability of the case.

This case involved going against a convicted killer and an opposing counsel whose challenges made navigating the ligation very difficult, making the case undesirable. Further, the case gained media attention across the world.

(11) The nature and length of the relationship with the client.

Respondent and her counsel have developed a very close professional relationship and the beginnings of a friendship on a personal level.

(12) Awards in similar cases.

Refer to other arguments throughout this memorandum.

Last, even if this Court declines to award attorney fees to Respondent based on the above, at the very least, it must award Respondent her reasonable and necessary costs. The Court in *White v. White*, 893 F. Supp. 2d 755, 759-60 (E.D. Va. 2012) analyzed precisely when costs should be awarded to a prevailing respondent in Hague cases. Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute … provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Court in *White* made clear that because ICARA does not specifically prohibit cost shifting, Rule 54(d)(1) gives rise to a presumption that costs are to be awarded to the prevailing party, even in Hague cases. *Id.* The Eighth Circuit has also upheld an award of costs under FRCP 54(d)(1) to a prevailing respondent in a Hague case. *See Slagenweit v. Slagenweit*, 63 F.3d 719 (8th Cir. 1995). Based on this authority, this Court must order Petitioner to pay Respondent's reasonable and necessary costs.

## CONCLUSION

Prior to trial in this matter, the Court ordered Petitioner to show cause and prove he intended to prosecute the case. Petitioner disregarded this order, and it can only be said that he intentionally did so. Petitioner and his counsel *never* took this matter seriously, and their

actions seriously costed Respondent, to the extent of $87,076.29. Based on the facts presented to the Court at trial and the above law and arguments, a finding that Petitioner acted in bad faith is warranted, and an award of attorney fees and costs based on Petitioner's conduct is appropriate. While the Court has inherent power to grant such an award based on Petitioner's bad faith actions alone, the Court should further award Respondent her attorney fees and costs as a sanction to Petitioner under FRCP 37 and her costs pursuant to FRCP 54(d). Petitioner's counsel should be joint and severally liable for any award in this matter pursuant to 28 U.S.C. § 1927. As is stated in the Hague Convention, "the interests of children are of paramount importance in matters relating to their custody." Throughout this matter, Petitioner and his counsel, clearly, did not consider the interests of ACN and KRN to be of paramount importance; they considered and acted as though Petitioner's interests were the only interests of importance. The Hague Convention was put in place to deter and help rectify behavior which is contrary to the Convention. Petitioner and his counsel, instead, themselves, acted contrary to the Convention. They abused the Convention and the legal process for bringing truly abducted children home, and they must be held accountable. Thus, Respondent respectfully requests that she be awarded her reasonable and necessary fees and costs totaling **$87,076.39**.

Respectfully submitted this 7th day of November, 2023.

_____
Katrina Seipel, OSB #164793
Of Attorneys for Respondent

CERTIFICATE OF SERVICE

I certify that this document was served by electronic service through the CM/ECF filing system and by e-mail upon Bradley Lechman-Su, at bradley@bradleylechmansu.com, on this 7th day of November, 2023.

Katrina Seipel, OSB #164793
Of Attorneys for Respondent
kas@buckley-law.com